IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Cassie C. Crisano,<br>    Plaintiff, | )<br>)<br>) |
| v. | )     1:19cv734 (CMH/JFA) |
| Rappahannock Regional Jail, <u>et al.</u>,<br>    Defendants. | )<br>)<br>) |

## **MEMORANDUM OPINION**

Cassie C. Crisano ("Plaintiff"), a Virginia inmate proceeding <u>pro se</u>, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, naming eight defendants and alleging they had violated her constitutional rights while she was detained at the Rappahannock Regional Jail ("RRJ"). [Dkt. No. 1]. On September 19, 2019, Plaintiff was directed to amend her complaint [Dkt. No. 4], and she filed an amended complaint on October 10, 2019. The amended complaint named RRJ, Superintended Grimes, and Captain Norris as defendants, and alleged discrimination based upon race and gender, due process violations, and Eighth Amendment violations regarding conditions of confinement. Service was perfected against RRJ and Superintendent Grimes, but not Defendant Norris who passed prior to being served.[1] After the cooperation of the served defendants, Defendant Norris's Administrator of his estate was identified and served.

Defendants Grimes and the RRJ have moved to dismiss the amended complaint [Dkt. No. 37, 38], and Plaintiff has been afforded the opportunity to file responsive materials pursuant to

---

[1] Defendant Norris passed on August 13, 2019. [Dkt. No. 42], and he will be dismissed, with prejudice, because an action against a deceased party "is a 'nullity,' and the deceased party should be dismissed with prejudice." <u>Johnson v. Schiff</u>, No. 9:11-CV-0531, 2013 U.S. Dist. LEXIS 141576, *17 (N.D. N.Y. Sept. 13, 2013) (citations omitted), <u>adopted by</u>, 2013 U.S. Dist. LEXIS 140950 (N.D.N.Y. Sept. 30, 2013). The docket sheet also indicates that Defendant Sgt. Adcok was not dismissed when plaintiff failed to name him in the amended complaint. Accordingly, Adcok will be dismissed without prejudice.

Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). The Administrator has also filed a motion to dismiss [Dkt. No. 41, 42], and Plaintiff has been afforded the opportunity to file responsive materials pursuant to Roseboro. Plaintiff has not responded to either motion to dismiss. Accordingly, this matter is now ripe for disposition. For the reasons that follow, each defendant's motion must be granted and the claims against each must be dismissed.

## I. Background

Plaintiff attempted to file a "Class Action" in an undated complaint on June 7, 2019. [Dkt. No.1]. By Order dated September 20, 2019, the Court ruled Plaintiff could not represent a class and provided her the opportunity to file an amended complaint because the original complaint failed to state a claim. [Dkt. No. 4 at 1]. The Order specifically referenced the Supreme Court's decision in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and "in particular Part IV, A, which states the standard that a plaintiff must meet in her complaint to state a claim upon which relief may be granted and avoid dismissal." [Dkt. No. 4 at 2].

## II. Amended Complaint

"[W]hen ruling on a defendant's motion to dismiss, a [trial] judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). The amended complaint set forth six claims and listed three defendants: RRJ, Grimes and Norris. The claims and the facts alleged in support of each claim are as follows:

1. Sex Discrimination, December 2017 through November 26, 2018. [Dkt. No. 5 at 5].

    - Male inmates were allowed out of their cells during the day, all day long, without an officer on the pod, but as a female plaintiff was only allowed out for two short breaks and was on lockdown the rest of the day.
    - Male inmates get unlimited exercise, but females like plaintiff are limited to the times when females have breaks.
    - There is no job for plaintiff at the jail. There are only 10 female jobs,

2

        but over 100 male jobs.

- Plaintiff must pay $2.50 for feminine hygiene products (pads), but males do not.

- Males can walk around the jail without officer escort, but plaintiff cannot go anywhere in the jail without an officer escort because she is female. [Id. at 6].[2]

2. Plaintiff was subjected to pre-conviction punishment because she was placed in general population with convicted felons. [Id. at 6].

3. Plaintiff was placed in overcrowded and understaffed pods that resulted in "numerous altercations" between plaintiff, a former law enforcement officer, and other inmates. [Id.].

4. Plaintiff was retaliated against for filing complaints by being subjected to verbal harassment by correctional officers, and plaintiff also received charges and was placed in segregation. [Id.].

5. Plaintiff was subjected to cruel and unusual punishment because "the vegetarian diet is spoiled ([i]nedible);" and officers refuse to give plaintiff toilet paper and feminine hygiene products (pads) when she asks for them; and the pods are filled with dirt, bugs, dust, and the air ventilation system is stained with black layers of dirt. [Id.]. The pods are never cleaned and the dirt etc. have caused plaintiff to suffer sever allergies, headaches, burning eyes, and coughing. The shower drains smell of mildew, and the drains clog up requiring plaintiff to stand in dirty water, which has caused plaintiff to have foot infections that require medical treatment. In August through September 2018, a pipe broke and there was no hot water for a week. In addition, plaintiff was only given two or three cups of water per day, resulting in plaintiff suffering from dehydration. [Id. at 6-7].

6. Plaintiff was subject to racial discrimination; all officers are African American. A female officer, Officer Williams (female), would lockdown and charge white inmates daily; Plaintiff was locked down by Williams for filing complaints about Williams' discrimination, Plaintiff's food was thrown away, and Williams changed the television "for ethnic inmates." [Id. at 7]. Sgt. Bertram also locked Plaintiff down because plaintiff complained he treated plaintiff differently from "the black female inmates." [Id.]. Sgt. Bertram also said a sexually vulgar statement to Plaintiff when she complained about his discrimination.

    A second Officer Williams (male) changed the television for black inmates when Plaintiff had been there first. This shows his racism because when Plaintiff protested, Watz, always changed the TV for the black inmates and would not let Plaintiff participate in clean up – Watz only picked black inmates. [Id.].

---

[2] Plaintiff alleges she reported the alleged discrimination to Sgt. Bertram, Sgt. Sahid, Officer Williams, and Captain Norris. [Id. at 5].

> Plaintiff was subjected to inhouse punishment, charged fees, locked down in her cell, verbally harassed by officers, and inmates that officers advised of my complaints, placed in isolation (the hole), strip searched for no reason, and forced to live in grossly inadequate living conditions. All of this violates Plaintiff's due process right to be free from pre-conviction punishment, and plaintiff's right to be treated equally. [Id. at 7-8].[3]

By Order dated April 20, 2020, the Court dismissed Claims 2 (housing pre-trial detainees with convicted persons), Claim 3 (overcrowded pod), and Claim 4 (retaliation).

### III. Standard of Review

A motion to dismiss tests whether a complaint states a cause of action upon which relief can be granted. Whether a complaint sufficiently states a claim is determined by "the familiar standard ... under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). Accordingly, a plaintiff's alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A plaintiff's allegations must "raise a right to relief above the speculative level," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard. Id.

---

[3] In addition to the three named defendants, Plaintiff mentions five other persons (Sgt. Bertram, Sgt. Sahid, Correctional Officer Williams, a different Officer Williams, and Officer Watz) in her amended complaint. In the Order dated April 20, 2020, the Court noted that Plaintiff had not named these persons as defendants and advised Plaintiff if she intended them to be defendants then she had to file a motion to amend the complaint to add them as additional defendants. [Dkt. No. 7 at note 1]. Plaintiff has not done so.

Where a complaint is filed by a prisoner acting pro se, however, that complaint must be construed liberally regardless of how unskillfully it is pleaded. Haines v. Kerner, 404 U.S. 519, (1972). A pro se litigant is therefore not held to the strict pleading requirements demanded of attorneys. Estelle v. Gamble, 429 U.S. 97, 106-07 (1976); Figgins v. Hudspeth, 584 F.2d 1345 (4th Cir. 1978), cert. denied, 441 U.S. 913 (1979). For these reasons, a court's power to dismiss a prisoner's pro se complaint summarily is limited. Id. at 1347.

## IV. Analysis

Defendants RRJ and former Superintendent Grimes argue that RRJ is not a proper party defendant; that Plaintiff has failed to allege an equal protection claim; that Plaintiff has not alleged sufficient facts to establish supervisory liability or the existence of a policy that is not based upon legitimate penological interests; and that the allegations in support of the Eighth Amendment conditions of confinement claim do not rise to the level of a constitutional violation.

*A. Proper Party: RRJ*

RRJ is an adult correctional facility located in Stafford, Virginia and serves the corrections needs of the City of Fredericksburg, King George County, Spotsylvania County, and Stafford County.[4] However, "[b]ecause a jail is not a legal entity, it is not a 'person' subject to suit under § 1983." Dales v. Haysi Reg'l Jail, No. 7:16cv386, 2016 WL 7168278, at *1 (W.D. Va. Dec. 8, 2016) (citing McCoy v. Chesapeake Corr. Ctr., 788 F. Supp. 890, 894 (E.D. Va. 1992), aff'd, 9 F.3d 1544 (4th Cir. 1993) (table case)); see Painter v. Blue Ridge Reg'l Jail Auth., No. 6:17cv34, 2017 WL 3725993, at *5 (W.D. Va. Aug. 29, 2017) (holding that a regional jail authority "is not subject to suit under § 1983 because it is an arm of the Commonwealth of Virginia" and collecting cases).

---

[4] https://www.rrj.state.va.us/ (last viewed Nov. 24, 2021).

5

"In addition to the fact that the jail is not a person under § 1983, the jail itself is not an individual, a corporation, a partnership, or an unincorporated association," and therefore lacks the capacity to be sued under Federal Rule of Civil Procedure 17(b). McCoy, 788 F. Supp. at 894; Easter v. Virginia, 4:05cv162, 2006 WL 5915495, at *2 (E.D. Va. 2006), aff'd sub nom. Easter v. U.S. Dep't of Health & Human Servs., 222 F. App'x 255 (4th Cir. 2007) (Commonwealth's Attorney's Offices, Virginia Peninsula Regional Jail, and Newport News Police Department lack capacity to be sued under Rule 17(b)); cf. Trantham v. Henry Cty. Sheriff's Office, No. 4:10cv58, 2011 WL 863498, at *5 (W.D. Va. 2011), aff'd, 435 F. App'x 230 (4th Cir. 2011) ("Local police and sheriff's departments in Virginia ... do not have the capacity to be sued"). Because RRJ is not a person under § 1983 and lacks the capacity to be sued under Rule 17(b), it must be dismissed as a defendant, with prejudice.

### B. Claim 1: Gender Discrimination

"To succeed on an equal protection claim, a prisoner must first show that he was treated differently from others who were similarly situated and that the unequal treatment resulted from intentional or purposeful discrimination. Once he makes this showing, the prisoner must allege facts that, if 'true, would demonstrate that the disparate treatment lacks justification under the requisite level of scrutiny.'" Daye v. Rubenstein, 417 F. App'x 317, 318-19 (4th Cir. 2011) (quoting Veney v. Wyche, 293 F.3d 726, 731 (4th Cir. 2002)). "When equal protection challenges arise in a prison context, however, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner." Veney, 293 F.3d at 732 (4th Cir. 2002) (citing Morrison v. Garraghty, 239 F.3d 648, 654-55 (4th Cir. 2001)). In the prison context, courts "must determine whether the disparate treatment is 'reasonably related to [any] legitimate penological interests.'" Id. (quoting Shaw v.

Murphy, 532 U.S. 223, 225 (2001)). This holds true "even when the alleged infringed constitutional right would otherwise warrant higher scrutiny." Id. (citing Morrison, 239 F.3d at 655, 656). Lastly, on equal protection claims, a plaintiff "must allege facts sufficient to overcome the presumption of reasonableness applied to prison policies." Id.

The Amended Complaint's asserts that Plaintiff's equal protection rights were violated because (1) "[m]ale inmates were allowed out of their cells during the day all day long without [an] officer in the Pod," (2) "[m]ale inmates are allowed to have unlimited physical exercise," (3) there are only "roughly 10 female jobs, where there [are] over 100 male jobs," and (4) "males can walk around the Jail without an officer escort" but females cannot." (Dkt. No. 5 at 6). The Amended Complaint also asserts that her equal protection rights were violated because (1) Plaintiff was put on lock down while African American inmates were not and (2) Plaintiff was not selected for clean up while African American inmates were selected. (Id. at 7). The Amended Complaint fails to allege sufficient facts to support her claims regarding time out of cells, exercise time, and jobs.

The Amended Complaint, however, indicates that Plaintiff was not similarly situated regarding time out of cells, exercise time, and jobs. First, the Amended Complaint alleges that there have been "numerous altercations between Plaintiff and other inmates due to Plaintiff being a Law Enforcement officer." (Id. at 6). Second, the Amended Complaint indicates that Plaintiff was classified and placed in segregation. (Id. at 6). Further, RRJ had a duty to protect Plaintiff from potentially dangerous situations, which would have included keeping her separate and apart from other inmates and detainees especially since she admits that her status as a former law enforcement officer had already resulted in altercations. It has long been established that prison officials have a duty to protect inmates from a substantial and known risk of harm, including

7

harm inflicted by other prisoners. See Farmer v. Brennan, 511 U.S. 825, 833 (1994) ("prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners").

The remaining portion of Claim 1 alleges Plaintiff's equal protection rights are violated because she has to "pay $2.50 to receive ... feminine hygiene (pads) products whereas males do not." [Dkt. No. 5 at 6].

> Although the Equal Protection Clause protects prisoners from discriminatory treatment by prison officials, prisoners are not a suspect class. See Roller v. Gunn, 107 F.3d 227, 233 (4th Cir. 1997); Pryor v. Brennan, 914 F.2d 921, 923 (7th Cir. 1990); Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989). Thus, prison regulations need only survive a reasonableness inquiry, not strict scrutiny. This is so because the "constitutional rights of prisoners – limited by the fact of incarceration itself and by valid penological objectives – must be balanced against the recognition" that prison authorities are "best equipped to make difficult decisions regarding prison administration." Blagman[v. White], 112 F. Supp. 2d [534,] 538, n.6 [(E.D. Va. 2000)] (internal citation omitted). In other words ... "the reason for this less rigorous" reasonably related standard of review "is that, particularly in a federal court's review of a state penal system, the inordinately difficult undertaking of prison administration and concerns about separation of power "'counsel a policy of judicial restraint.'" Lane v. Griffin, 834 F.2d 403, 406 (4th Cir. 1987) (citing Turner [v. Safley], 482 U.S. [78,] 85 [(1987)]).

Waters v. Bass, 304 F.Supp.2d 802, 810 (E.D. Va. 2004) (footnote omitted).

In City of Revere v. Massachusetts General Hospital, 463 U.S. 239 (1983), the Supreme Court held that a state entity (there a municipality) could be compelled to reimburse the provider of emergency medical services. Revere based its holding on the Due Process Clause, not the Eighth Amendment stating that the "Due Process Clause ... require[s] the responsible government or governmental agency to provide medical care to persons ... who have been injured while being apprehended by the police." Id. at 244. The Court, however, qualified the duty with regard to payment adding that "as long as the governmental entity ensures that the medical care needed is in fact provided, the Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care" id. at 245, and further limited its holding by noting "[n]othing we say here affects any right a hospital or governmental

8

entity may have to recover from a detainee the cost of the medical services provided to him." Id. n. 7. Consistent with Revere, the Fourth Circuit has held that a jail has a "legitimate interest" in defraying the costs to effectively managing the facility. Slade v. Hampton Roads Reg'l Jail, 407 F.3d 243, 251-52 (4th Cir. 2005).

Since Revere, several federal courts have applied its rational to requirements that inmates pay for medical care and other items finding that the charging of co-payments or fees to inmates by correctional institutions do not violate the Eighth or Fourteenth Amendments. See Poole v. Isaacs, 703 F.3d 1024, 1027 (7th Cir. 2012) ("the imposition of a modest fee for medical services, standing alone, does not violate the Constitution"); Reynolds v. Wagner, 128 F.3d 166, 174 (3rd Cir. 1997) (holding that charging inmates for medical care is not per se unconstitutional and "simply represents an insistence that the prisoner bear a personal expense that he or she can meet and would be required to meet in the outside world."); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 408 (9th Cir. 1985) (imposition of a three dollar fee for each medical visit did not constitute deliberate indifference); Farrakhan v. Johnson, 2009 U.S. Dist. LEXIS 40342 at *5 (E.D. Va. May 13, 2009) (inmates are not entitled to free medical care, and requiring an inmate to pay a co-payment "does not state a claim of constitutional dimensions"); Breakiron v. Neal, 166 F.Supp.2d 1110, 1115 (N.D. Tex. 2001) (applying the rational basis test, court found deducting co-payments from prisoner's inmate trust account for medical services was rationally related to prison's legitimate interest in the efficient use of prison resources and dismissed equal protection claim). Other courts have extended the rationale by noting that it promotes responsible behavior by inmates and allows for better utilization of prison funds. See Waters, 304 F. Supp.2d at 811 (no cruel or unusual punishment based on deduction of room and board fees from inmate account); Robinson v. Fauver, 932 F. Supp. 639, 644-45 (D.N.J. 1996)

(requiring inmates who received money from outside sources to pay for legal photocopying and medical care did not violate the Equal Protection Clause; state furthered legitimate governmental interest in "promoting inmate responsibility and prudent management of money, conserving the resources of the state, and defraying the burgeoning cost of inmate medical care"); Johnson v. Dept. of Public Safety & Corr. Services, 885 F. Supp. 817, 820 (D. Md. 1995) ("the flexible [co-pay] policy represents a commendable effort to promote inmate responsibility and the efficient use of scarce medical resources"). The same rationale applies to requiring inmates who can afford to pay for hygiene products[5] to pay for them.

Plaintiff's claim, however, does not allege that she actually paid for any feminine hygiene products at RRJ or, more importantly, that she has had to go without such items.[6] See Argue v. Hofmeyer, 80 F. App'x 427, 430 (6th Cir. 2003) (holding that a prisoner failed to state an Eighth Amendment claim because he had not alleged a complete denial of hygiene products or that the deprivation occurred out of indifference to his hygiene needs); Brown v. Brown, 46 F. App'x 324, 325-26 (6th Cir. 2002) (holding that a prisoner who was merely inconvenienced because he was unable to purchase personal hygiene supplies for several months due to a hold on his account failed to state an Eighth Amendment claim); Owens v. Sebelius, 357 F. Supp. 2d 1281, 1285 (D. Kan. 2005) (collection of parole supervision fees for time spent on parole from inmates

---

[5] The term "hygiene products" in the context of conditions of confinement includes, but is not limited to, soap, toothbrushes, toothpaste or powder, combs, toilet paper, shaving equipment request, and products for the special hygiene needs of female inmates (including sanitary napkins). See generally Essex County Jail Annex Inmates v. Treffinger, 18 F. Supp. 2d 445, 455, 463 (D.N.J. 1998); see also Atkins v. Cnty. of Orange, 372 F. Supp. 2d 377, 406 (S.D.N.Y. 2005) (hygiene articles include "soap, razors, combs, toothpaste, toilet paper, access to a mirror and sanitary napkins for female prisoners" (internal quotations marks and citations omitted)); Williams v. McKeithen, 121 F. Supp. 2d 943, 963 (M.D. La. 2000) (same, adding deodorant and toilet paper).

[6] According to this Court's records, Plaintiff has been indigent for several years. [Dkt. No. 9] (inmate account report indicates a negative balance of over $3,700 as of April 30, 2020). In a prior action last year, Plaintiff's inmate account report indicated she had a negative balance of over $2205 on May 22, 2019. Cassie C. Crisano v. Shenandoah County Sherriff, Case No. 1:19-cv-00487-CMH-JFA (E.D. Va. June 19, 2019), (Dkt. No. 9-1), appeal dismissed, (4th Cir. Apr. 22, 2020). The same reports indicate a debt of $24 for "sanitary napkins," which means Plaintiff was not denied sanitary napkins while at RRJ.

trust account after he was recommitted to the prison system did not deny him access to hygiene products because they are provided to any indigent inmate and did not establish an equal protection). Even though a jail has a responsibility to ensure that Plaintiff has hygiene products, it does not mean that a jail cannot impose a fee to defray the costs. Further, simply because Plaintiff presumably might have had to pay for hygiene products if she could afford them, does not mean that male inmates who could afford to pay for hygiene products were did not have to pay for them. Indeed, the amended complaint contains no such allegation.[7] Accordingly, Plaintiff's gender discrimination claim will be dismissed.

*C. Claim 5*

In Claim 5, Plaintiff alleges various conditions of confinement claims to include the following:

(1) "food on the vegetarian diet is spoiled [i]nedible on a daily basis"
(2) "officers refuse [to] give out toilet paper and Female Hygiene (pads) when I ask,"
(3) "the Pods are filled with dirt, bugs, dust, and the air ventilation systems are stained with black layers of dirt that is never cleaned,"
(4) "shower stalls have a potent mildew smell that rises up from the drains an[d] clog[s] when taking showers," and
(5) "[b]etween August and September 2018 the jail had sever[al] power

---

[7] Further, in the prison context, hygiene is not divisible into items that one inmate might need and another inmate (male or female) might not need. For instance, some male inmates do not need shampoo because they are bald. Would it be an equal protection issue if a female inmate was told she had to pay for shampoo? It would not. Prisons need to ensure an inmate's hygiene needs are met, and those needs will necessarily differ from inmate to inmate at times and there is no constitutional issue as to how those needs are paid for as long as an indigent inmate's needs are met. As the Fourth Circuit recently observed, "courts must 'accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.'" Desper v. Clarke, 1 F.4th 236, 244 (4th Cir. 2021). Here, Plaintiff does not allege she was denied any item she needed for her hygiene needs. If RRJ required Plaintiff to defray those costs, such is a rational reason that will prevent overuse of an item that it would have to supply for free if the inmate was indigent. See, e.g., Breakiron, 166 F.Supp.2d at 1115 (applying the rational basis test, court found a co-pay policy accomplishes this goal of efficiently using prison resources "by applying negative reinforcement to the human tendency to overuse" items or services "paid for by a third party," which a "common sense reason" that many private insurers use as well); Johnson, 885 F. Supp. at 820 ("the flexible [co-pay] policy represents a commendable effort to promote inmate responsibility and the efficient use of scarce medical resources").

>outages and a water pipe broke. There was not water in the Jail for a week and [was] only provided 3 cups of waters sometimes only 2 a day."

(Dkt. No. 5 at 6-7). Plaintiff, however, does not link either Defendant Grimes or Defendant Norris to any of her complaints regarding the conditions of confinement. The amended complaint simply refers one time to unnamed "officers." [Dkt. No. 5 at 6]. The Court brought Plaintiff's failure to add certain officers discussed in other portions of the amended complaint as defendants to Plaintiff's attention in the Order dated April 20, 2020, which was over 19 months ago. Defendant Grimes specifically noted in his motion to dismiss that he was not named in connection with this claim. [Dkt. No. 38 at 9-11]. Despite her failure to properly allege liability on the part of Grimes being pointed out, again, Plaintiff has taken no action.

The Court's Order dated September 20, 2019, expressly cautioned Plaintiff to review Ashcroft v. Iqbal, 556 U.S. 662 (2009) when drafting her amended complaint. In Iqbal, the Court noted that a complaint must contain factual allegation of reach element of claim, one of which is obviously who caused the harm by action or inaction. Id. at 683 (the complaint did "not contain any factual allegation sufficient to plausibly suggest [the defendants'] discriminatory state of mind"). It is beyond dispute that every § 1983 claim must "each Government official ... is only liable for his or her own misconduct," id. at 677, and the "factual content" of the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678; see also West v. Atkins, 487 U.S. 42, 48 (1988) (a plaintiff must allege facts indicating that he was deprived of rights guaranteed by the Constitution or laws of the United States and that the alleged deprivation resulted from conduct committed by a person acting under color of state law); Conley v. Gibson, 355 U.S. 41, 47 (1957) (complaint must "give the *defendant* fair notice of what the plaintiff's claim is and the *grounds upon which it rests*") (emphasis added); accord Davison v. Randall, 912 F.3d 666, 679 (4th Cir. 2019) ("To state a

claim under Section 1983, a plaintiff must show that the alleged constitutional deprivation at issue *occurred because of action taken by the defendant* 'under color of . . . state law.'") (emphasis added, citation omitted). Accordingly, Claim 5 will be dismissed.[8]

*D. Claim 6*

In Claim 6, Plaintiff alleges she was subjected to "racial discrimination," but she alleges no actions on the part of Defendant Grimes, and only mentions Defendant Norris in a conclusory manner without alleging any specific act or failure to act involving Norris.[9] To the extent there is any theory of liability, it would appear to be an attempt to hold each liable on a respondeat superior theory of liability. [Dkt. No. 5 at 8] (defendants "failed to adequately supervise, train, discipline and in any other way control" the correctional officers). Under § 1983, there are three elements necessary to establish supervisory liability: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). The amended complaint contains no

---

[8] Allowing Plaintiff to amend would be futile because an action against the officers named in the complaint, assuming they had something to do with the allegations in claim 5, would be barred by the statute of limitations. The amended complaint is dated October 1, 2019 [Dkt. No. 5 at 15], and also states that the dates of the alleged events were December 1, 2017 through November 26, 2018. [Id. at 9]. The statute of limitations for § 1983 claims that accrue in Virginia is two years. Lewis v. Richmond City Police Dep't, 947 F.2d 733, 735 (4th Cir. 1991) (citing Virginia Code § 8.01-243(A)). A § 1983 claim accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

[9] The specific persons named in the body of the complaint responsible for the alleged actions were all "African American" correctional officers, and were identified as a female officer Williams, a male Officer Williams, Officer Watz, and Sgt. Bertram. [Dkt. No. 5 at 7]. As noted earlier, these officers are not named as defendants and Plaintiff took no timely action to have them named as defendants when the Court pointed this point out to her in the Order dated April 20, 2020.

allegations referencing Defendants Grimes or Norris indicating either (1) had actual or constructive knowledge of the conduct alleged, (2) that either responded in an inadequate manner, or (3) that there is an affirmative causal link between either of them and the constitutional injuries alleged by Plaintiff.

As there are no allegations referencing Defendant Grimes, there are no allegations that (1) he had actual or constructive knowledge of the conduct alleged, (2) his response to that knowledge was so inadequate, or (3) that there is an affirmative causal link between Defendant Grimes' inaction and the constitutional injuries alleged by Plaintiff. As a result, the Amended Complaint fails to state a supervisory liability claim, and Claim 6 must be dismissed as to Defendant Grimes.

Because the Plaintiff has failed to state a claim against RRJ or the individual named defendants, the defendants' other arguments do not need to be considered.

### V. Conclusion

For the foregoing reasons, defendants' motions to dismiss [Dkt. No. 37, 41] must be granted. An appropriate order will issue alongside this memorandum opinion.

Entered this 4th day of Jan 2022.

_Claude M. Hilton_
United States District Judge

Alexandria, Virginia